IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN ROMANO, IN HER INDIVIDUAL CAPACITY, AND AS LEGAL GUARDIAN OF MINOR CHILD, SIERRA CALDWELL, Plaintiffs, | : : : : : : : : : : : | CIVIL ACTION |
| v. | : : | |
| CHRISTOPHER S. YOUNG, DEAN CERAUL AND PLAINFIELD TOWNSHIP, Defendants. | : : : : : | No. 07-1708 |

## MEMORANDUM

**Schiller, J.**                                                                                                                                                **February 1, 2011**

      Plaintiff Karen Romano brings a civil rights action under 42 U.S.C. § 1983 on behalf of herself and her child, Sierra Cardwell. Plaintiffs allege that Defendant Christopher Young, a former Plainfield Township police officer, sexually assaulted Cardwell numerous times when she was a minor. Along with claims against Young, Plaintiffs have filed § 1983 claims against Defendant Plainfield Township ("Plainfield") and Defendant Dean Ceraul, Plainfield's police chief. Plainfield and Ceraul allegedly failed to verify Young's credentials before hiring him, failed to adequately train him, and harassed Plaintiffs in retaliation for reporting Young's sexual relationship with Cardwell. Plaintiffs' Complaint also includes state-law claims for defamation and false light invasion of privacy. Currently before the Court is Plainfield and Ceraul's motion for summary judgment. For

the reasons that follow, the motion will be granted in part and denied in part.

I.  **BACKGROUND**

  A.  **Young's Hiring and Background Investigation**

Young was employed by Plainfield as a police officer beginning in 2001 until his arrest in 2006. (Pls.' Counter Statement of Facts in Opp. to Defs.' Mot. for Summ. J. 1.) Young applied to the Plainfield police department on June 18, 2001. (Defs.' Mot. for Summ. J. Ex. B [Young Appl.].) Ceraul reviewed the application. (*Id.* Ex. C [Ceraul Dep.] 130].) The application indicated that Young had been a police officer in Lebanon, New Jersey and had previously completed some police training. (Young Appl.) His application included a certificate from the State of New Jersey's Police Training Commission indicating that he had completed a "Basic Course for Class One Special Law Enforcement Officers." (*Id.*) It also included a certification from the Ocean County, New Jersey Police Academy that Young had completed a course of study in "Basic Special Police Training Class I." (*Id.*)

After Ceraul reviewed the application, he concluded that Young could not be hired because he was not a resident of Plainfield Township and because he did not have the certification required by Pennsylvania law. (Ceraul Dep. 130-32.) Ceraul advised Young that in ordered to be considered for the position, he would need to obtain a waiver of mandatory basic training based on his New Jersey police experience from the Municipal Police Officers Education Training Commission ("MPOETC"), which sets hiring and training standards for police departments in Pennsylvania. (*Id.* at 131.) On December 21, 2001, Young submitted an Application for Certification to MPOETC. (Defs.' Mot for Summ. J. Ex. E [Appl. for Certification dated Dec. 21, 2001].) Ceraul signed a

2

certification on the application indicating that Plainfield had completed: (1) a criminal history and fingerprint check, (2) a credit check; (3) personal interviews of three persons the applicant knows; (4) interviews of the applicant's employers for the past five years; and (5) a driver's license check. (*Id.*) The application indicated that any misrepresentation contained therein constituted cause for termination and criminal prosecution. (*Id.*) Young was provided with a temporary certification by MPOETC as a Pennsylvania-eligible police officer on January 22, 2002. (Defs.' Mot. for Summ. J. Ex. G [Allentown Police Academy Grade Sheet]; Ex. D [Beverly Young Dep.] 47.) As of March 12, 2002, MPOETC determined that Young had complied with its requirements to be certified as a Pennsylvania police officer. (Beverly Young Dep. 55)

After being advised that Young had completed the training required by MPOETC, Plainfield began another review of his application. Plainfield investigated Young's criminal history, driving record, personal credit history, and also required a urine test. (Ceraul Dep. 140-42.) Young was also required to undergo physical and psychological examinations, which he passed. (Defs.' Mot. for Summ. J. Ex. I [Aff. of Anthony Drago dated May 15, 2010]; Beverly Young Dep. 38.) Ceraul also checked three of Young's personal references. (Ceraul Dep. 141-42.) On December 13, 2001, Young was appointed as a Probationary Patrol Officer for Plainfield. (Defs.' Mot. for Summ. J. Ex. J [Letter from Joyce Lambert, Plainfield Bd. of Supervisors dated Dec. 13, 2001].)

In 2006, Pennsylvania State Police investigators alerted MPOETC officials that Young had falsified certain information in his waiver application; MPOETC therefore revoked his certification. (*Id.* at 57-58). MPOETC determined that Young had misrepresented his credentials and falsified the number of hours of training he had completed in New Jersey. (*Id.* at 65, 90.) It also came to light that Young had been accused of stalking women in the past. (Pls.' Opp'n to Defs.' Mot. for

Summ. J. Dated Sept. 25, 2008 Ex. M [George Duckworth Dep. 5].)

      **B.     Young's Relationship with Cardwell**

Young and his wife were neighbors and friends with Romano and Cardwell. (*Id.* Ex. A [Romano Dep.] 12-13.) Beginning in 2002, however, Young began making sexual advances and acting inappropriately towards Cardwell. In June of 2002, when Cardwell was twelve years old, she signed up to participate in a junior police academy partly supervised by Young. When she was there, Young "would stare at [her] breasts, stare at [her] body. Look at [her] in a sexual way and lick his mouth." (*Id.* Ex. G [Cardwell Dep.] 145-46.) This behavior caused Cardwell to drop out of the junior police academy after two or three days. (*Id.*) On December 31, 2004, Young offered to "check on" then-fourteen year old Cardwell and some of her friends who were home alone. When Young came over, he made multiple inappropriate remarks to Cardwell as she and her friends were bathing in a hot tub. (*Id.* Ex. N [PSP Report of Tpr. Hulbert dated Sept. 15, 2005 (PSP Report)] at 8.) Later that evening, Young sexually assaulted Cardwell in the kitchen. (*Id.*)

Young and Cardwell had sexual relations approximately five times between May of 2005 and July of 2005; Cardwell was fourteen to fifteen years old during this period. In May of 2005, Cardwell attended a party at a friend's home. (*Id.* at 2.) Young and Cardwell were sitting around a fire in the backyard when Cardwell decided she wanted marshmallows. (*Id.*) Young offered to take her to a local grocery store. (*Id.*) On the way back from the store, Young and Cardwell had sexual relations. (*Id.*) A few weeks later, Young called Cardwell and picked her up at her home at approximately 2 a.m. (*Id.* at 3.) Young drove to a nearby housing development and had sexual intercourse with Cardwell in his truck. (*Id.*) On July 4, 2005, Young attended a party at Cardwell's home. (*Id.* at 4.) Young and Cardwell left the party in Young's car to get beer. (*Id.*) Young drove

4

to the Wind Gap Kidney Center, where Young and Cardwell had sex in Young's car. (*Id.*) Young and Cardwell had two more sexual encounters in August of 2005. (*Id.*)

Towards the end of August 2005, Romano stumbled upon Caldwell's diary, which described a number of the sexual encounters with Young. (*Id.* at 5.) Approximately two days after she discovered the diary, Romano reported Young to Plainfield Chief of Police Dean Ceraul, Young's supervisor. (Romano Dep. 58-59.) When Ceraul spoke to Young about the allegations, Young allegedly said that Romano and Young were having an affair, and that Romano "made up the story," because Romano was upset that Young wanted to end their relationship. (*Id.*) Young and Ceraul allegedly spread the false rumor—subsequently repeated in the press—that Young had been having sex with Romano, which injured Romano's reputation. (*Id.* at 63, 66-69.) Romano alleges that Ceraul did not take the allegations seriously at first; the Plainfield Police Department were "sitting on it," and "nothing was done." (*Id.* at 62-63; 66.) After Romano reported to Ceraul that Young had been having sex with Cardwell, she observed uniformed Plainfield police officers parked in their patrol vehicles outside of her home "six or seven times." (*Id.*) Romano "felt that they were parked there for a reason, to either scare us, to shut us up." (*Id.* at 178.) Police officers also pulled Romano over on at least four occasions in 2005 and 2006: once for speeding; once for a problem with her inspection sticker; once for failing to stop at a red light; and once for no stated reason. (*Id.* at 159-170.) Romano alleges that the traffic stops were designed to intimidate her and to retaliate against her for making the complaint against Young.

In September 2005, the Pennsylvania State Police and the Northampton County District Attorney investigated the sexual assault allegations against Young. (PSP Report 1.) Based on the investigation, Young was arrested on April 18, 2006. (*Id.* at 26.) After pleading guilty to statutory

5

sexual assault and no contest to unsworn falsification related to his employment application, Young was sentenced to a term of ten to thirty-six months' incarceration on April 27, 2007. (*Id.* at 40.)

This action was filed on April 27, 2007. In July of 2008, Young moved for partial summary judgment and Plainfield and Ceraul moved for summary judgment on all applicable counts. On March 27, 2009, the late Judge Thomas Golden granted the motions because Young was not acting under color of state law, as the liaisons with Cardwell took place while Young was off-duty and not in uniform. The Third Circuit reversed this decision, holding that based on Cardwell's testimony, there was a genuine issue of material fact as to whether Young was acting under color of state law. Ceraul and Plainfield now move for summary judgment on all counts against them.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). A court may not make credibility determinations or weigh the evidence in making its determination.

*See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III. DISCUSSION

### A. Counts II and III: Substantive Due Process Claims

Counts II and III charge Ceraul and Plainfield, respectively, with violating Cardwell's substantive due process rights by: (1) possessing knowledge of and acquiescing to Young's violations; (2) failing to stop Young from committing the violations; (3) failing to adequately train Young; (4) failing to properly screen Young's background; and (5) failing to maintain proper policies and procedures.

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the Supreme Court held that a municipality can be liable under § 1983 if its policy or custom causes a constitutional injury. Identifying a "'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997). An "act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404. To find a municipality liable with regard to a sexual abuse claim, a plaintiff must show that the defendant's policy, practice, or custom "played an affirmative role in bringing about the sexual abuse and that the defendant acted with deliberate indifference to that abuse." *Black by Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 712-13 (3d Cir.1993). Additionally, the plaintiff must show that the

municipality's deliberate conduct was the "moving force" behind the injury alleged. *Bryan County*, 520 U.S. at 404.

### 1. *Inadequate screening*

Inadequate screening of a single municipal applicant's background can give rise to *Monell* liability under § 1983 if "adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right . . . ." *Id.* at 411. A court must carefully scrutinize the causal connection between the inadequate screening and the injury alleged: "culpability . . . cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury . . . it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury." *Id.* at 412 (emphasis in original).

Here, there is a genuine issue of material fact with respect to whether the alleged sexual assaults were a "plainly obvious consequence" of Plainfield's failure to investigate the stalking allegations against Young. *See id.* at 411. Stalking involves elements of sexual predation, as witnessed by Young's conduct towards Cardwell. A reasonable jury could thus find that there is enough of a causal connection between the alleged inadequate screening and the sexual assaults to support Plaintiffs' *Monell* claim. Therefore, the Court will deny Defendants' motion with respect to the inadequate screening claims against Plainfield in Count III.

However, the inadequate screening claims against Ceraul must be dismissed. For a supervisor to be liable under § 1983, he "must have been involved personally" in the alleged constitutional violations, "meaning through personal direction or actual knowledge and acquiescence." *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009). Plaintiffs have offered

8

no evidence indicating that Ceraul had any knowledge of Young's sexual relationship with Cardwell while it was ongoing, nor that Ceraul directed or acquiesced in Young's behavior. Accordingly, the Court grants Defendants' motion with respect to the inadequate screening claims in Count II.

    *2.    Failure to train*

Plaintiffs next argue that the moving Defendants' failure to adequately train Young constituted deliberate indifference to Caldwell's constitutional rights. Specifically, Plaintiffs note that Young "never received training regarding the possibility that a male police officer may exercise undue influence over a female civilian, especially a minor child, or that women may become amorous towards male police officers." (Pls.' Opp'n to Defs.' Mot. for Summ. J. 20)

This claim fails. The "failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Here, it is "hardly obvious that a police officer, sworn to uphold the law," would violate the rights "of the very citizens whom [he was] duty bound to protect because [Young] lacked training that instructed [him] that such activity was unlawful." *See Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 915 (3d Cir. 2003) (holding that failure to train to train officers not to commit burglaries did not constitute deliberate indifference). All police officers should know, without the need for training, that sexually assaulting minors is against the law. The failure to impart this information is unlikely to lead to sexual assaults by police officers. Plaintiffs may also show deliberate indifference where the failure to train has caused a pattern of violations. However, Plaintiffs have not alleged that there was any pattern of sexual abuse violations in the Plainfield Police Department. Therefore, the Court will grant

9

Defendants' motion with respect to the failure to train allegations in Counts II and III. *See Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (citing *Bryan County*, 520 U.S. at 408-09.).

### 3. Alleged cover-up of Young's illegal activity

Plaintiffs allege that Ceraul "engaged in a cover-up of Young's activities, sex acts, and sex crimes," and that "Ceraul did not investigate the matter, instead, he accepted as true . . . Young's denials that the incidents took place." (Pls.' Opp'n to Defs.' Mot for Summ. J. 11.) They also allege that Ceraul and Plainfield acquiesced in Young's string of sexual assaults. Romano testified that when she first reported the incident to the Plainfield Police Department, she "was angry at the fact that when [she] went to the police they were like, well, we will open - we will look into it," and that "nothing was done." (Romano Dep. 66). However, the evidence establishes that Ceraul promptly interviewed Young about the allegations, and that the State Police were investigating Young soon thereafter. (Ceraul Dep. 169-70; PSP Report 1.) Furthermore, maintaining a substantive due process claim requires that official conduct "shocks the conscience," which "encompasses only the most egregious official conduct." *Chainey v. Street,* 523 F.3d 200, 219 (3d Cir. 2008). Plaintiffs fail to introduce any evidence of conscience-shocking behavior. Additionally, Plaintiffs have not shown that the delay caused Cardwell any constitutional injury. After a thorough investigation, Young was arrested, prosecuted, convicted, and incarcerated. *See Los Angeles Cnty., v. Humphries,* 131 S .Ct. 447, 452 (2010) (discussing § 1983's causation requirement). Finally, Plaintiffs have not pointed to any evidence to substantiate their claims that Defendants acquiesced in Young's criminal behavior. Accordingly, the Court will grant summary judgment with respect to the claims in Counts II and III that Ceraul and Plainfield failed to investigate and acquiesced in the alleged constitutional violations.

### B. Counts IV and V: Alleged Police Harassment

Counts IV and V charge Ceraul and Plainfield, respectively, with violating Plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment rights in connection with authorizing police harassment and intimidation. After Romano complained about Young's illicit activities with her daughter, uniformed officers allegedly parked their patrol cars outside of Plaintiffs' home and made illegal traffic stops of Romano's vehicle. However, with respect to the allegations against Plainfield in Count V, Plaintiffs have not pointed to any municipal policy or custom that would support their *Monell* claim. Therefore, the Court will grant summary judgment with respect to Count V.

Count IV, which charges Ceraul with authorizing the alleged harassing behavior, must also be dismissed. There is no evidence in the record to support her contention that Ceraul was personally involved in the alleged unlawful behavior by the Plainfield Police Department. Indeed, Romano in her deposition testified that, "I don't know if Dean Ceraul instructed them. I feel like they all worked like a brotherhood, and the other officers may have taken it upon themselves to stop them." (Romano Dep. 176.) Lacking evidence that Ceraul participated in or directed any harassment or intimidation toward Plaintiffs, the Court will grant Defendants' motion with respect to Count IV.

The Court also notes that Counts IV and V contain many of the allegations found in Counts II and III, such as "deliberately failing to train" and "possessing knowledge of and acquiescing to the violations." However, as referenced in the Court's discussion of Counts II and III, Plaintiffs have not produced sufficient evidence to support these allegations. Plaintiffs have not pointed to any evidence regarding insufficient training that may have caused the alleged harassment, have not shown that Ceraul knew about any of this alleged activity, nor that any of the activity was done

11

pursuant to a municipal policy or custom.

### C. Defamation and Invasion of Privacy Claims Against Ceraul

Counts VIII and IX charge Ceraul with defamation and false light invasion of privacy, respectively, stemming from the false rumors Ceraul allegedly repeated about Young's claim of a sexual relationship with Romano. In order to prove a claim for defamation in Pennsylvania, a plaintiff must prove: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff; and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. Ann. § 8343(a). A communication is defamatory if it tends to harm the reputation of another. *Franklin Prescriptions, Inc., v. The New York Times Co.*, 267 F. Supp. 2d 425, 434 (E.D. Pa. 2003). A statement is "published" if it is communicated to a third person. *Sobel v. Wingard*, 531 A.2d., 520 522 (Pa. Super. Ct. 1987).

Although Young's claims that Romano slept with him could conceivably harm her reputation, she has not pointed to any evidence, beyond her own suspicions, to establish that Ceraul repeated any such statements to anyone. Therefore, the Court will grant summary judgment with respect to Count VIII against Ceraul.

The Court will also grant summary judgment in favor of Ceraul on Romano's false light invasion of privacy claim. In Pennsylvania, the tort of false light invasion of privacy requires the actor to give "publicity" to information that would be highly offensive to a reasonable person. *Wecht v. PG Pub. Co.*, 725 A.2d. 788 (Pa. Super. Ct. 1999). "'Publicity' means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be

regarded as substantially certain to become one of public knowledge." *Doe v. Wyoming Valley Health Care System, Inc,* 987 A.2d 758, 765-66 (Pa. Super. Ct. 2009). Again, Romano points to no admissible evidence to show that Ceraul publicly disseminated any information to anyone about the alleged affair with Young, and therefore cannot meet her burden of persuasion. *See Celotex,* 477 U.S. at 323-24. The Court will therefore grant summary judgment in favor of Ceraul on Count IX.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion on all counts applicable to Ceraul, on Count V, and on Count III, except with respect to the inadequate screening claims. The Court will deny the motion with respect to the inadequate screening claims in Count III. An appropriate Order will be docketed separately.